# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHEELMAXX INC. doing business as WHEELMAXX OFF ROAD AND TIRE REPAIR, LUBEMAXX LUBE AND OIL, WEST COAST TIRES & AUTO CENTER, and WEST COAST TIRES & TRUCK CENTER,<br><br>Plaintiff,<br><br>v.<br><br>MARAAJ SINGH MAHAL, an individual; AMERICAN TIRE & AUTO REPAIR CENTER, INC., a California corporation,<br><br>Defendant.<br>_____/ | Case No.  1:22-cv-01506-KES-SKO<br><br>**FINDINGS AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART**<br><br>(Doc. 21)<br><br>**OBJECTIONS DUE: 21 DAYS** |

On December 29, 2023, Plaintiff Wheelmaxx, Inc., doing business as Wheelmaxx Off Road and Tire Repair, Lubemaxx Lube and Oil, West Coast Tires & Auto Center and West Coast Tires & Truck Center, ("Plaintiff") filed a motion for default judgment against Maraaj Singh Mahal, an individual, and American Tire & Auto Repair Center, Inc., a California corporation ("American Tire") (collectively the "Defendants") pursuant to Fed. R. Civ. P. 55(b) (the "Motion"). (Doc. 21).  Defendants did not file an opposition to the Motion. (*See* Docket). The Motion is therefore deemed unopposed.  For the reasons set forth below, the undersigned recommends that the Motion be granted in part.[1]

---

[1] The motion for default is referred to the undersigned by E.D. Cal. Local Rule 302(c)(19) for the entry of findings and recommendations to the assigned district judge. *See* 28 U.S.C. § 636(b)(1)(B).

## I.     BACKGROUND[2]

Plaintiff filed a complaint against Defendants on November 21, 2022, alleging breach of contract, trademark infringement, service mark infringement, trade dress infringement and unfair competition. (Doc. 1). The complaint seeks an award of statutory damages, injunctive and declaratory relief, attorney's fees and costs.

Plaintiff alleges they entered into a franchise agreement (the "agreement") with the Defendants in January 2022, affording Defendants the right to operate a Wheelmaxx location and use the Wheelmaxx system, which includes "the repairing, servicing, inspecting, and customizing passenger and commercial vehicles utilizing specific equipment, layouts, interior and exterior accessories, identification schemes, products, standards, specifications, proprietary marks, and identification." (Doc. 1 at 2). The agreement also permitted Defendants to use Wheelmaxx's proprietary marks, trade dress and other indicia of origin as specified by the agreement. (*Id.*). This included Plaintiff's federal trademark registered with the U.S. Patent and Trademark Office (the "Federal Mark") and its service mark registered with the State of California (the "State Mark").[3] (Doc. 1 at 4). The Federal Mark and State Mark are pictured here respectively:



Plaintiff alleges the Defendants failed to pay fees owed to Plaintiff under the agreement, resulting in the following causes of action:

Count I: Breach of Contract (against Mahal);

Count II: Trademark Infringement (under Section 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state laws) (against both Defendants);

---

[2] Upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Accordingly, the factual background is based on the allegations of the complaint. (*See* Doc. 1.)

[3] The Federal Mark was registered on June 20, 2017, under registration number 5,228,085, with serial number 87-243,151 (Doc. 1 at 4). The State Mark was filed on January 16, 2015, under registration number 00069705. (*Id.*)

2

> Count III: Unfair Competition (under Section 43 of the Lanham Act, 15 U.S.C. §1125 (a) and applicable state laws) (against both Defendants);
>
> Count IV: Trade Dress Infringement (under Section 43 of the Lanham Act, 15 U.S.C. §1125, and the common law) (against both Defendants).

(Doc. 1 at 6-8).

Defendants have not filed an answer or taken any action to defend against the lawsuit. (*See* Docket). According to Plaintiff's proofs of service (Doc. 11), American Tire was served with copies of the summons and complaint on November 29, 2022, at 3:22 PM. Plaintiff requested an entry of default against American Tire on March 17, 2023 (Doc. 12), and the Clerk of Court granted the request on March 20, 2023 (Doc. 13). Plaintiff served Mahal on July 1, 2023. (Doc. 17). Plaintiff requested an entry of default against Mahal on July 24, 2023, and the Clerk of Court entered the default on July 25, 2023. (Doc. 19). Plaintiff filed the instant motion for default judgment and attorney's fees and costs on November 21, 2023. (Doc. 21).

## II.  DISCUSSION

### A.  Legal Standard

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See id.* The Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.* "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo–Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See TeleVideo Sys., Inc.*, 826 F.2d at 917. A plaintiff is required to prove all damages sought in the complaint. *See TeleVideo Sys., Inc.*, 826 F.2d at 917–18; *see also Elektra Entmn't Grp., Inc. v. Bryant*, No. CV 03-6381 GAF (JTLX), 2004 WL 783123, at *5 (C.D. Cal. Feb. 13, 2004) ("Plaintiffs must 'prove up' the amount of damages that they are claiming."). Any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Before awarding a default judgment against a party who has failed to plead or otherwise defend, the Court must determine the adequacy of service of process, as well as the Court's jurisdiction over the subject matter and the parties. *Project Sentinel v. Komar*, No. 1:19-cv-00708-DAD-EPG, 2021 WL 1346025, at *6 (E.D. Cal. Apr. 12, 2021) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)).

**B.     Analysis**

    **1.     Defendants Were Properly Served**

Service of a complaint in federal court is governed by Federal Rule of Civil Procedure 4. Under Rule 4, an individual may be served by: (1) delivering a copy of the summons and of the complaint to that person personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2).[4] According to the proofs of service filed by Plaintiff, Defendants were personally served with copies of the summons and complaint by a process server. (*See* Docs. 11, 17). Because Defendants were personally served by a process server, the undersigned finds that service of Defendants was adequate. *See* Fed. R. Civ. P. 4(e)(1).

---

[4] Rule 4 also permits service on an individual in accordance with state law, though it is inapplicable here. Fed. R. Civ. P. 4(e)(1).

4

### 2. The Court Has Jurisdiction Over This Case

District courts have subject matter jurisdiction of all civil actions arising under the laws of the United States. 28 U.S.C. § 1331. As noted above, Plaintiff has asserted three claims arising under federal law, including trademark infringement, unfair competition and trade dress infringement, and the Court has jurisdiction over these claims. The Plaintiff's remaining state law claim (breach of contract) is "so related" to Plaintiff's federal causes of actions that the Court may also properly exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

The Court also has personal jurisdiction over Defendants because they have "certain minimum contacts" with California such that "the suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (citation omitted). Specifically, the Defendants conduct business in the district, are residents of the district, and/or the events giving rise to the claims took place in the district. (Doc. 1 at 3). Therefore, the Court has personal jurisdiction over the Defendants.

### 3. The *Eitel* Factors Weigh in Favor of Recommending Default Judgment

#### a. Possibility of Prejudice to Plaintiff

The first relevant factor under *Eitel* is whether Plaintiff will suffer prejudice if the Court does not enter a default judgment. Plaintiff will effectively be denied a remedy until Defendants participate and make an appearance in the litigation—which may never occur—if default judgment is not entered. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See Philip Morris USA, Inc.*, 219 F.R.D. at 499 (finding "prejudice" exists where the plaintiff has no "recourse for recovery" other than default judgment). Because Plaintiff would be prejudiced if the Court were to deny its motion, this factor weighs in favor of default judgment.

#### b. Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The next relevant *Eitel* factor requires a Court to evaluate the substantive claims pled in the complaint and the general sufficiency of the complaint. In weighing this factor, courts evaluate

5

whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).  The Court will address each count in turn.

### i.    Count I: Breach of Contract (against Mahal)

To establish a breach of contract claim under California law, Plaintiff must establish (1) they had a contract with Mahal, (2) Plaintiff performed under the contract, (3) Mahal breached that contract, and (4) Plaintiff suffered damages as a result. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) (citing *Oasis West Realty, LLC* v. Goldman, 51 Cal. 4th 811, 821 (2011)).

Plaintiff has alleged the facts necessary to plead and prove a breach of contract claim. Plaintiff alleges it entered into a franchise agreement with Mahal on January 10, 2022, and Plaintiff included the agreement the complaint.  (Doc. 1-1 at 10).  Plaintiff also alleges it performed its obligations under the contract.  (Doc. 1 at 4) (stating Defendants were licensed to use the Wheelmaxx marks and trade dress).

The agreement required Mahal to pay the following fees:

> (1) a weekly amount equal to the greater of 5% of gross revenues or $125.00 payable with set off,
>
> (2) an advertising fee equal to 2% of gross re venues or $25.00 per week if greater, payable without setoff, and
>
> (3) late fees, interest and costs and expenses, including reasonable attorneys' fees included because of defaults.

(Doc. 21-4 at 10).  The agreement provides that the Defendants would be in default if they breached any obligations under the agreement, and Plaintiffs would be entitled to terminate the agreement if Defendants defaulted or if the Defendants failed to timely cure any defects.  (Doc. 21-4 at 23).  The agreement provides Defendants would also be in default if they failed to pay any required fees, received written notice of the failure and failed to cure the defect within 72 hours. (*Id.*).  If Plaintiff terminated the agreement, Defendants' right to use Plaintiff's proprietary marks and system would end immediately, and if Defendants continued to use Plaintiff's propriety marks after the agreement ended, such use would constitute a willful trademark infringement.  (*Id.* at 26).

6

Plaintiff alleges Mahal breached the contract by failing to pay fees required by the agreement. (*See, e.g.*, Doc. 1 at 5-6; Doc. 21-4 at 10). Plaintiff provided a notice to Defendants on October 26, 2022, that they were in breach of the agreement. (Doc. 21-4 at 83). As a result of the breach, Plaintiff alleges it suffered damages based on Defendants' continued use of the marks, including damage to Plaintiff's reputation (Doc. 21-3 at 5), in addition to the fees Defendants failed to pay under the agreement. Accepting the factual allegations as true, Plaintiff has pled and proven a breach of contract claim. The merits and sufficiency of the allegations related to Plaintiff's breach of contract claim thus favor entering default judgment.

    **ii. Counts II and III: Trademark Infringement and Unfair Competition (against both Defendants) under the Lanham Act and applicable state laws**

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, Plaintiff must demonstrate "(1) a 'protectible ownership interest in the mark" and (2) a likelihood of 'consumer confusion' in the defendant's use of its allegedly infringing mark." *Lodestar Anstalt v. Bacardi & Company Limited*, 31 F.4th 1228, 1245 (9th Cir. 2022) (quoting *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012)). If Plaintiff sufficiently alleges a claim for trademark infringement under the Lanham Act, they will have sufficiently alleged a claim for unfair competition under the Lanham Act, as well as claims for both trademark infringement and unfair competition under California law. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (quotations and citation omitted) ("The ultimate test [federally] for unfair competition is exactly the same as for trademark infringement: whether the public is likely to be deceived or confused by the similarity of the marks."); *Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190, 1221 (9th Cir. 2012) ("It is undisputed that Appellants' state law trademark infringement claim . . . is subject to the same legal standards as their Lanham Act trademark claim."); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) ("The Ninth Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims under the Lanham Act.") (internal quotations omitted). Taking Plaintiff's allegations as true, Plaintiff's marks are registered on the federal register, which constitutes prima facie evidence of the validity of the marks and Plaintiff's exclusive right to use the mark as

specified by the registration.  15 U.S.C. §§ 1057(b), 1151(a); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

Plaintiff has also sufficiently alleged the Defendants' unlawful use of its marks is likely to cause customer confusion.  "The test for 'likelihood of confusion' requires the factfinder to determine whether a 'reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.'" *Surfvivor Media, Inc. v. Survivor Productions*, F.3d 625, 630 (9th Cir. 2005) (quoting *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)). In the Ninth Circuit, courts analyze eight factors to determine whether there is a likelihood of customer confusion: (1) the strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979).

Courts have routinely held the continued use of a mark by a "holdover" franchisee creates a high likelihood of customer confusion. *See Baskin-Robbins Franchising LLC v. Pena*, No. 19-cv-06657-JSC, 2020 WL 2616576, at *8 (N.D. Cal. May 7, 2020), *report and recommendation adopted*, No. 19-cv-06657-LHK, 2020 WL 2614851 (N.D. Cal. May 22, 2020) ("Defendants have used and continue to use the Baskin-Robbins marks following termination of the Franchise Agreement.... Such continued unauthorized use as a holdover franchisee is dispositive of the trademark infringement issue.") (internal quotation marks and alterations omitted); *HDOS Franchise Brands, LLC v. El Paso Hot Dog, LLC,* No. 3:21-cv-00201-AJB-BLM, 2021 WL 5629923 (S.D. Cal. June 29, 2021); *Kahala Franchisng, LCC v. Real Faith*, LLC, No. 2:21-cv-08115-ODW (SKx), 2022 WL 1605377, at *3 (C.D. Cal. May 20, 2022) ("[I]t is 'well settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes[ ] trademark infringement.'") (quoting *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992)).  It tracks that continued use of an exact mark is likely to cause customer confusion.  *Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHx), 2008 WL 11334205 (C.D. Cal. June 23, 2008) ("As a matter of common sense, a franchisee's failure to

discontinue use of the exact trademarks is more likely to cause confusion among consumers than its use of a similar but not identical mark.") (citing *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 195 (3d Cir. 1990)).

Plaintiff alleges the Defendants continued to use the mark after Plaintiffs terminated the franchise agreement. (Doc. 21-3 at 5). According to the allegations, the Defendants are "holdover" franchisers, and by continuing to use the very marks Plaintiff has a protectible interest in, there is likely to be customer confusion in the marketplace. *Baskin-Robbins Franchising v. Pena*, No. 19-cv-06657-JSC, 2020 WL 2616576, at *7 (N.D. Cal. May 7, 2020) ("Such continued unauthorized use as a holdover franchisee is dispositive of the trademark infringement issue . . . . Further, because Defendants are not using a similar mark but instead continue to use the same mark they used as Baskin-Robbins franchisees under the Franchise Agreement, it is not necessary to engage in the non-exhaustive, eight-factor analysis established by the Ninth Circuit to determine whether there is a likelihood of consumer confusion.") (citing *Century 21 Real Estate LLC v. Ed/Var Inc.*, No. 5:13-cv-00887 EJD, 2014 WL 3378278, at *5 (N.D. Cal. July 10, 2014) (internal quotation marks omitted)); *see also IHOP Franchising, LLC v. Hameed*, No. 2:14-cv-1752-TLN-CKD, 2015 WL 429547, at *3 n.2 (E.D. Cal. Feb. 2, 2015). Accepting the factual allegations as true, Plaintiff has pled and proven a trademark infringement claim (and subsequently an unfair competition claim), which favors entering a default judgment.

### iv.   Count IV: Trade Dress Infringement

To prove a claim for trade dress infringement, Plaintiff must show "(1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Clicks Billiards, Inc., v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001) (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998)). Trade dress, "refers to the 'total image of a product' and may include features such as size, shape, color, color combinations, texture or graphics.'" *International Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 824 (9th Cir. 1993).

Plaintiff has not sufficiently alleged a claim for trade dress infringement, as it is unclear what trade dress Plaintiff believes they have a protectible interest in beyond their registered marks. In the complaint, Plaintiff states the following:

> Defendants' location is identified by signs, exterior appearance, advertising materials, and other items on which the word "Wheelmaxx" appears *in the same lettering style and in the same distinctive color scheme that Wheelmaxx uses for the shops operated by Wheel Maxx licensees.*
>
> The use by Defendants of trade dress that is identical to the Wheelmaxx trade dress without permission constitutes a false designation of the authority of the shop, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of his shop with Wheelmaxx shops operated by Wheelmaxx licensees. Such adoption of Wheelmaxx's trade dress violates Section 43 of the Lanham Act, 15 U.S.C. §1125, and the common law.

(Doc. 1 at 8) (emphasis added). At most, Plaintiff alleges the Defendants have used the word "Wheelmaxx" in the same distinct lettering and style, but any interest Plaintiff has in the word "Wheelmax" and its coloring are vindicated by its trademark infringement claim. Simply asserting trade dress is "distinctive" is insufficient and Plaintiff has not adequately identified its trade dress to establish a claim for trade dress infringement. *See Glassybaby, LLC v. Provide Gifts, Inc.*, No. C11–380 MJP, 2011 WL 2218583, at *2 (W.D. Wash. June 6, 2011) ("Plaintiff's complaint states that the hand-blown glass containers are distinctive, but it does not describe the design in any detail . . . . It is not possible to determine what the features of the votive candleholders are and whether they are functional or non-functional. This is not adequate to satisfy Rule 12(b)(6)."); *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14–03954 DDP, 2014 WL 6892141, at *3 (C.D. Cal. Nov. 5, 2014) ("In particular, 'a plaintiff must specifically define the list of elements that comprise the trade dress.'") (quoting *Treat, Inc. v. Dessert Beauty*, No. 05–923 PK, 2006 WL 2812770 at *14 (D. Or. May 5, 2006); *see also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:3 (4th ed. 2014) ("Whatever plaintiff may claim as the combination of elements making up its alleged trade dress in the product or its packaging and presentation, it is not adequate for the plaintiff to solely identify such a combination as 'the trade dress.' Rather, the discrete elements which make up that combination must be separated out and clearly identified in a list. All courts agree that the

10

elements of the alleged trade dress must be clearly listed and described.").

Plaintiff does not contend its trade dress is nonfunctional or has acquired secondary meaning. (*See* Doc. 21-5 at 17-18) ("These elements are met here. As explained above, the likelihood of confusion is established by Defendants' continued unauthorized use of the identical Trademark that were previously licensed, after revocation of the license . . . . Accordingly, Wheelmaxx is likely to succeed on the trade dress infringement and unfair competition claims."). Plaintiff only alleges the *marks* (as opposed to any trade dress) have acquired secondary meaning. *See, e.g.*, Doc. 1 at 4 ("As a result of the extensive sales, advertising, and promotion of items identified by the Marks, the public has come to know and recognize the Marks and associate them exclusively with products and services offered by Wheelmaxx and its franchisees."). Without any specificity related to Plaintiff's trade dress, it is not clear the substantive allegations related to a trade dress infringement claim have any merit. Even accepting the factual allegations as true, Plaintiff has not pled and proven a trade dress infringement claim, which weighs against entering a default judgment on this count. Plaintiff does not assert it is entitled to damages based on Defendants' alleged trade dress infringement, however, and Plaintiff's insufficiency as to Count IV does not prevent Court from entering a default judgment on other counts. *See Farmer v. Thar Progress, Inc.*, No. 1:22-cv-01076-AA, 2023 WL 8448498, at *6 (D. Or. Dec. 6, 2023) ("The Court has already determined that Plaintiffs are entitled to default judgment as to their claim for breach of contract and so the denial of default judgment as to this claim will not substantively alter the outcome of the motion or the computation of damages.")

    **c.**  **The Sum of Money at Stake in the Action**

The fourth *Eitel* factor, the sum of money at stake in relation to the seriousness of a defendant's conduct, weighs slightly against granting default judgment. Plaintiff is seeking $95,139.87 in damages, costs and fees, which includes the following: $15,915.50 for actual damages resulting from Defendants' breach of contract; $73,347.17 of actual damages based on uncollected royalty and marketing fees; $4,830.00 for attorney's fees; and $1,047.20 in costs associated with litigating the action. Default judgment is disfavored when a large amount of money is involved or is unreasonable considering the defendant's actions. *See Truong Giang*

*Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Bd. of Tr. v. Core Concrete Const., Inc.*, No. 11-cv-02532-LB, 2012 WL 380304, at *1, *4 (N.D. Cal. Jan. 7, 2012)

Here, Plaintiff seeks monetary relief based on the terms of the agreement signed by the parties. While the undersigned ultimately recommends adjusting the total amount of actual damages to be awarded to the Plaintiff (*see infra* Section II(B)(3)(c)), these damages are specifically tailored to Plaintiff's breach of contract claim and accordingly, the court concludes the fourth *Eitel* factor weighs against entering default judgment.

### d.  **Remaining *Eitel* Factors**

The remaining *Eitel* factors generally weigh in favor of entering a default judgment. No genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true (*TeleVideo Sys.*, 826 F.2d at 917–18) and Defendants have not submitted anything to contradict the well-pleaded allegations in the complaint. *See United Specialty Ins. Co. v. Saleh*, No. 1:16–cv–00632–DAD–MJS, 2016 WL 4434479, at *2 (E.D. Cal. Aug. 22, 2016) ("Inasmuch as default serves as an admission of Plaintiff's well-pled allegations of fact, it must be concluded that there is no dispute as to any material fact.") (internal citation omitted). Accordingly, this factor favors entry of default judgment. Because Defendants failed to file responsive pleadings or oppose Plaintiff's motion for default judgment, the Court has no evidence before it to establish that Defendants' failure to participate in the litigation is due to excusable neglect. Thus, this factor also weighs in favor of granting default judgment. *See, e.g., Gilbert v. Rashid*, 2023 WL 5938567, at *4 ("Defendant was properly served yet has not appeared over a year since service was effectuated. When service is proper it suggests there was not excusable neglect.") (citations omitted). While the policy favoring a decision on the merits inherently weighs strongly against awarding default judgment in every case, this factor is outweighed in consideration of the other applicable factors that weigh in favor of recommending default judgment.

### 3.  **Terms of the Judgment and Proof of Damages**

Although analysis of the *Eitel* factors supports a default judgment, the Court also considers

the terms of the judgment sought by Plaintiff.

### a. Declaratory Judgment

Plaintiff first requests the Court "[e]nter a declaratory judgment that Defendant Mahal's conduct violated the terms of the Franchise Agreement and constituted good cause for termination of the agreement" and subsequently "[e]nter an order ratifying and enforcing the termination of the Franchise Agreement as of the effective date contained in the Notice of Termination." (Doc. 1 at 8-9) (*see also* Doc. 21-5 at 22). As explained by the Ninth Circuit,

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*McGraw-Edison Co. v. Preformed Line Prod. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (quoting BORCHARD, DECLARATORY JUDGMENTS, 299 (2d ed. 1941)). The discretion "must be exercised by the trial court with a view to the complete solution of the differences between the litigants." *Taiwan C.R. Litig. Org. v. Kuomintang Bus. Mgmt. Comm.*, No. C 10-0362 VRW, 2011 WL 13376927, at *4 (N.D. Cal. Jan. 18, 2011) (quoting *Prod. Eng'g & Mfg., Inc. v. Barnes*, 424 F.2d 42, 44 (10th Cir. 1970)). Taking Plaintiff's allegations as true, declaratory relief is appropriate for the same reasons the factors weigh in favor of default judgment. A declaratory judgment stating that Defendant Mahal's conduct violated the terms of the Franchise Agreement and constituted good cause for termination of the agreement will settle legal relations regarding the parties' contract and will afford relief from uncertainty, insecurity and controversy giving rise to the proceeding.

### b. Injunctive Relief

Plaintiff's complaint and motion for default judgment requests the following:

> Enjoin Defendants, and their agents, servants, employees, and attorneys, and all others in active concert or participation with them, from infringing upon the Wheelmaxx Marks, and trade dress, and from otherwise engaging in unfair competition with Wheelmaxx;
>
> Enjoin Defendant Mahal, and his agents, servants, employees, and attorneys, and all others in active concert or participation with them, to comply with all post-

termination monetary and de-identification obligations under the Franchise Agreement.

(Doc. 1 at 8-9).

Under the Lanham Act, courts "may grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a). Because Plaintiff has sufficiently alleged a trademark infringement claim, they may seek a permanent injunction by demonstrating "(1) they have "suffered an irreparable injury;" (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury;" (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted;" and (4) "the public interest would not be disserved by a permanent injunction." *Blumenthal Distributing, Inc. v. Comoch Inc.*, 652 F.Supp.3d 1117, 1136 (C.D. Cal. Jan. 24, 2023) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Plaintiff has demonstrated they will suffer an irreparable injury absent an injunction because they have established a likelihood of success on the merits of their trademark infringement claim. 15 U.S.C. § 1116(a) ("A plaintiff . . . shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a . . . likelihood of success on the merits for a [trademark infringement violation].") Other remedies, such as monetary damages, are inadequate to compensate Plaintiff for any injuries from Defendants' trademark infringment, as "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

The balance of hardships also weighs in favor of an injunction, as Plaintiff will suffer an irreparable harm absent an injunction, and an injunction only limits Defendants from undertaking further unlawful activity. *Century 21 Real Estate LLC v. Ramrom Enterprises*, No. 1:14–cv–00788–AWI–JLT, 2014 WL 3615790, at *5 (E.D. Cal. July 22, 2014) ("The balance of hardships tips strongly in plaintiff's favor. In contrast to the irreparable harm that Plaintiff would suffer by Defendants' continued misrepresentations and infringement, Defendants would not be harmed by

an injunction which would require them to discontinue unlawful conduct."). Lastly, "[in] the trademark context, courts often define the public interest at stake as the right of the public not to be deceived or confused." *7–Eleven, Inc. v. Dhaliwal*, 2012 WL 5880462, *7 (E.D. Cal. 2012) (quoting *CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F.Supp.2d 1051, 1081 (E.D. Cal. 2009)). Granting Plaintiff's injunction would thus serve the public interest at stake. Accordingly, the Court will recommend granting Plaintiff's request for a permanent injunction against Defendants.

### c.   Actual Damages

Plaintiff seeks $89,262.67 in actual damages based on Defendants' breach of contract. "For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Proc. Code § 3300. Damages arising from a breach of contract must be "clearly ascertainable in both their nature and origin." Cal. Civ. Code § 3301.

Plaintiff's actual damages can be split into three categories: (1) past-due costs outlined in the termination agreement; (2) unpaid royalty fees and (3) unpaid advertising fees. The past-due costs outlined in the termination agreement include $15,915.50 that Defendants failed to pay for (1) a "POS software" from May 2022 ($954), (2) upstart inventory ($12,961.50), and expenses associated with "Trainer," ($2,000), which Plaintiff outlined in a previous notice to Defendants. (Doc. 24-4 at 83). Plaintiff has sufficiently "proven up" these damages with its attached exhibits, as they demonstrate Defendants agreed to pay these specific costs but did not do so. (*See* Doc. 24-4 at 83). These damages are "clearly ascertainable," as Plaintiff itemized in its notice to Defendants. (*Id.*).

Defendants agreed to pay (1) a royalty fee equal to the greater of 5% of gross revenues or $125.00 per week if greater, payable without set off, and (2) an advertising fee equal to 2% of gross re venues or $25.00 per week if greater, payable without setoff (the advertising fee). (Doc. 21-4 at 10). Because Defendant has not upheld its obligations under the Franchise Agreement, Plaintiff does not have access to Defendant's Sales Reports to calculate precisely what royalty and advertising fees they owe. Thus, Plaintiff used the average sales figures from its two other

15

franchises (Tulare and Merced) from the relevant period to estimate its royalty and advertising fees. (See Doc. 21-3 at 8-9). Based on those averages, Plaintiff requests $39,051.41 in royalty fees and $34,295.76 in advertising fees for a total of $73,347.17.

Plaintiff's damages of $73,3347.17 are not "clearly ascertainable" for several reasons. For instance, there is a sizeable disparity between the two franchisees' sales that Plaintiff used to calculate the unpaid fees in 2022. The Tulare franchise had $1,145,036.84 in total sales in 2022, while the Fresno franchisor had less the sales ($506,899.44) for the same period. (Doc. 21-3 at 9). Similarly, the weekly sales average for Plaintiff's other franchisees in 2023 ranged from $11,387.46 to $21,722.20. (Doc. 21-3 at 9). It is unclear that Defendants, whose company would be in its infancy, would have had similar sales. *Cf. Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 889–90, 93 Cal.Rptr.2d 364 (2000) (stating that determining lost profits for a new business "presents problems of proof . . . because absence of income and expense experience renders anticipated profits too speculative to meet the legal standard of reasonable certainty"). Plaintiff has not provided any authority, binding or persuasive, to demonstrate this is an appropriate approach to calculate its damages. At most, one court has allowed a party to estimate its actual damages based on a defendant's historical sales data (*see Choice Hotles International, Inc. v. Patel*, No. 12cv3042-WQH-WMc, 2013 WL 12114787, at *3 (S.D. Cal. June 11, 2013)), though Plaintiff does not have access to such data in this case.

Alternatively, Plaintiff contends that the Court should award them $10,350 in royalty and marketing fees. The agreement stated that Defendants would pay a minimum fee of $125 per week for royalty payments and $25 per week for marketing fees. (Doc. 21-4 at 10). Plaintiff states that Defendants missed payments from October 31, 2022, through February 24, 2024 (or 69 weeks in total), and therefore, using the minimum allotted in the contract, Plaintiffs are entitled to $10,350 in royalty and marketing fees. (Doc. 28 at 3). Plaintiff has sufficiently "proven up" these damages based on its agreement with Defendants, and therefore, Plaintiff is entitled to $10,350 in royalty and marketing fees. In total, Plaintiff is entitled to $26,265.50 of actual damages consisting of $15,915.50 in past-due costs and $10,350 in royalty and marketing fees.

### d. Attorney's Fees and Costs

California Code of Civil Procedure § 1021 "recognizes that attorney fees incurred in prosecuting or defending an action may be recovered as costs . . . when they are otherwise authorized by statute or by the parties' agreement." *Santisas v. Goodin*, 17 Cal.4th 599, 71 Cal.Rptr.2d 830, 951 P.2d 399, 404 n. 4 (1998). Defendants agreed to pay late fees, interest and costs and expenses, including reasonable attorneys' fees as part of the agreement. (Doc. 21-4 at 29) ("If legal action is properly commenced in court by either party to enforce this Agreement or to determine the rights of any party . . . the substantially prevailing party, in addition to any other remedy, shall be entitled to receive its reasonable actual attorney's fees and costs.").

"Once a party is found eligible for fees, the district court must then determine what fees are reasonable." *Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016) (citation omitted). Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. [*See D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990); *Hensley*, 461 U.S. at 461]. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. *See Hensley*, 461 U.S. at 433. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [Footnote omitted] *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation). The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. [Citations omitted]

*Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience and reputation." *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted). Plaintiff also bears "the burden of submitting billing records to establish that the number of hours it has requested is reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

Plaintiff has requested $4,830.00 for attorney's fees based on the 16.1 hours expended by Plaintiff's attorney Amy Lovegren-Tipton, who has approximately 15 years of litigation experience. (Doc. 21-1 at 2). Tipton's billing rate is $300 per hour, which is the rate she charges all clients and which she contends is commensurate with her experience. (*Id.*). This hourly rate is reasonable. *Webb v. County of Stanislaus*, No. No. 1:19-cv-01716-DAD-EPG, 2022 WL 446050, at *6 (E.D. Cal. Feb. 14, 2022) ("In the Fresno Division of the Eastern District of California, generally, attorneys with twenty or more years of experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded $250.00 to $325.00, attorneys with five to ten years of experience are awarded $225.00 to $250.00, and less than $200.00 for attorneys with less than five years of experience."); *see also Perkins v. City of Modesto*, 2020 WL 4547325, at *2 (E.D. Cal. Aug. 6, 2020) (collecting cases). Based on a review of Tipton's billing summary, the time expended is reasonable, and the Court will recommend that Plaintiff's request for attorney's fees for $4,830.00 be granted.

Plaintiff seeks to recover $1,047.20 in costs, which consists of $402.00 in initial case filing fees and $645.20 in process service fees. (Doc. 21-1 at 2). Defendants agreed to pay late feels, interest and costs and expenses, including reasonable attorneys' fees included because of defaults, in the agreement. (Doc. 21-4 at 29). Because Plaintiff may recover the cost of litigation under the agreement (Doc. 21-4 at 29), the Court will recommend that Plaintiff's request for costs be granted.

### III. CONCLUSION AND RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. 21) be GRANTED IN PART with respect to Plaintiff's claims for breach of contract, trademark infringement and unfair

       competition (Counts I-III);

2. Judgment is DENIED as to all Defendants with respect to Plaintiff's claim for trade dress infringement (Count IV);

3. Plaintiff be awarded actual damages in the amount of $26,265.50;

4. Plaintiff be awarded reasonable attorney's fees in the amount of $4,830.00 and costs of suit in the amount of $1,047.20;

5. Defendants, and their agents, servants, employees, and attorneys, and all others in active concert or participation with them are ENJOINED

    i. from infringing upon the Wheelmaxx Marks,

    ii. from otherwise engaging in unfair competition with Wheelmaxx; and

    iii. to comply with all post-termination monetary and de-identification obligations under the Franchise Agreement; and

6. Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to Defendants at their last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**March 28, 2024**__                /s/ *Sheila K. Oberto*
                                                          UNITED STATES MAGISTRATE JUDGE